UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| KENNETH CARTER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:15-cv-00959-TWP-DML |
| | ) |
| ENVIROTECH, | ) |
| | ) |
| Defendant. | ) |

**[1]AMENDED ENTRY ON MOTION FOR SUMMARY JUDGMENT**

This matter is before the Court on a Motion for Summary Judgment filed pursuant to Federal Rule of Civil Procedure 56 by Defendant Envirotech Extrusion, Inc. ("Envirotech") (Filing No. 16). After being terminated from his position as an assistant operator and grinder for Envirotech, *pro se* Plaintiff Kenneth Carter ("Carter") initiated this lawsuit alleging discrimination based on race. Envirotech moved for summary judgment on the bases that Carter cannot establish a *prima facie* case for his claim of discrimination and that it had a legitimate, non-discriminatory reason for terminating him. For the following reasons, the Court **GRANTS** Envirotech's Motion for Summary Judgment.

**I.     BACKGROUND**

The following material facts are not necessarily objectively true; but, as required by Federal Rule of Civil Procedure 56, both the undisputed and disputed facts are presented in the light most favorable to Carter as the non-moving party. *See Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

---

[1] An earlier version of this Entry, using the former "direct" and "indirect" method of analysis, was inadvertently docketed. That Entry (Filing No. 23) and Judgment (Filing No. 24) are stricken from the record.

Envirotech is an Indiana corporation located in Richmond, Indiana, and is in the business of manufacturing recycled rubber products. Carter was hired as an assistant operator and grinder on November 14, 2012, and continued working there until he was terminated on August 29, 2014. Assistant operators and grinders perform duties that include ensuring that there are no problems with materials as they are processed down a conveyor belt and running scrap rubber through a grinder. An assistant operator is also referred to as a "stacker" since the position requires the employee to stack the finished rubber after a shear cuts the rubber into pieces of a desired size. On occasion, Carter would sometimes operate a tow motor.

Carter is an African-American male and during his time at Envirotech, he was the only African-American employee. His immediate supervisor was Joe Thompson, the second shift foreman. (Filing No. 1-1 at 4.) Envirotech's revised handbook provides that lay-offs are determined by "length of employment with the company,"—and that seniority brings with it, "certain privileges and benefits including bumping opportunities". (Filing No. 1-3 at 2.) During the course of his employment at Envirotech, Carter was laid off, along with other employees, on two separate occasions. Carter was first laid off on August 12, 2013 and brought back to work just two weeks later. (Filing No. 1-1 at 4.) The second time he was laid off was on April 9, 2014 and he was brought back again to work on June 30, 2014. *Id.* While he was still laid off, other people were hired. *Id.* After being laid off the second time, Carter filed a discrimination claim with the Equal Employment Opportunity Commission ("EEOC"). Once he made his filing with the EEOC, his employer called him back to work. *Id.*

At his three month employment evaluation, Envirotech noted that Carter was doing well, and they were pleased with his ability to pay attention, remain efficient and calm, help others, and learn quickly. (Filing No. 18-2 at p. 1-4.) Sometime after this evaluation, Carter began to get

negative marks on his employment record. On October 21, 2013, Carter was advised, by a Personnel Action Notice, that missing additional work days could result in termination because he had exceeded the maximum amount of personal leave. (Filing No. 18-5.) On his one year review in November of 2013, Carter received a mixed review, and was rated an "average employee." (Filing No. 18-18.) The evaluator acknowledged that Carter learns fairly quickly, remains calm and had improved at checking quality when stacking sheets; but also indicated that Carter texted too much, needed to help others and stop leaning on the table, stop going so fast on the forklift, and needed to watch his attendance. *Id*.

Also in November 2013, Carter complained to his supervisor that he had been subjected to racist comments by two of his co-workers. Specifically, co-workers Tyler Farley ("Farley") and Luke Rudicil ("Rudicil") called him the "N" word and kept talking about "nigger this, nigger that". (Filing No. 18-17 at p. 8.) Supervisor Tony Martin ("Martin") talked to the men and both admitted they had made the racist comments. Martin and the assistant supervisor, Bob Parrish told Carter that they would not put up with the discrimination. (Filing No. 18-17 at 10.) Martin gave Carter the opportunity to agree to a punishment for the men, which included termination. Carter declined to participate in the reprimand. Farley and Rudicil were issued a written warning which stated "… this sort of harassment will *not* be tolerated. The next complaint will result in immediate termination. *Final Warning*." (Filing No. 18-19) (emphasis in original). At his deposition, Carter testified that he was satisfied with the way the situation was handled. After this incident, Carter never brought any other incidents of racial comments to the attention of Martin or any other supervisors. (Filing No. 18-1 at p.4 ¶18.)

On January 6, 2014, Carter received another Personnel Action Notice because he had again exceeded the allotted days of personal leave for the six month period. (Filing No. 18-7.) On July

3

7, 2014, Carter put his tow motor in reverse and crashed into and damaged some of Envirotech's product. He was given a verbal warning after this incident. (Filing No. 18-10.) On July 28, 2014, Carter drove his tow motor into a pole which caused damage to the pole and guard. (Filing No. 18-11.) Three days later, Carter mishandled the forklift and the forks went through a blower, damaging the motor of the blower. (Filing No. 12.) Finally, on August 29, 2014, Carter was operating Pressure Sensitive Adhesive. He was supposed to be making a scrap roll from the material, instead he chopped them into smaller pieces. (Filing No. 18-13.) After he put the materials in the trash, he was told to retrieve it all. Carter refused to do so unless someone helped him. *Id.* He refused the order three or four times before he was finally told to leave Envirotech. *Id.* Carter was told that he was being terminated for insubordination, destruction of company property and attendance issues. (Filing No. 18-17 at p. 45.)

Carter testified that he filed a charge of discrimination with the EEOC in June 2014 during the period of time when he was laid off for the second time[2]. (Filing No. 18-17 at p.6). He was terminated on August 29, 2014. Martin filed an amended answer to the EEOC charge on March 20, 2015. (Filing No. 18-16). On March 31, 2015, Carter received a right to sue letter. On June 18, 2015, Carter filed his Complaint in this Court, alleging that Envirotech had violated his rights as protected by Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII"). He asserted a claim of racial discrimination and retaliation under Title VII. (Filing No. 1-1). He argues that he was never written up or had any problems until after he filed his EEOC claim. He asserts that he suffered discrimination at Envirotech when he was harassed by his co-workers and contends that he was laid off twice because he was African-American, since Caucasian employees with less seniority were allowed to keep their jobs. A co-worker that worked

---

[2] Carter's Charge of Discrimination filed with the EEOC is not dated (Filing No. 1-2 at p. 2), however, the accompanying letter is dated June 17, 2014. *Id*. at p. 3.

4

there for many years informed Carter that Envirotech would never make an African-American an operator and he believes the company discriminated against him due to his race by not advancing his career. ([Filing No. 1-1 at 3](#).) Carter admits to missing the amount of days alleged by Envirotech, except for one day. ([Filing No. 18-17 at p. 18](#).) He also admits to damaging the products and property. ([Filing No. 20](#).)

Envirotech filed its Answer and Defenses on August 18, 2015 ([Filing No. 12](#)). On January 19, 2016 Envirotech filed its Motion for Summary Judgment and as required by the local rules, complied with the notice requirement for *Pro Se* Cases (See [Filing No. 19](#)).

## II. SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 489–90 (7th Cir. 2007). In ruling on a motion for summary judgment, the court reviews "the record in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Zerante*, 555 F.3d at 584 (citation omitted). "However, inferences that are supported by only speculation or conjecture will not defeat a summary judgment motion." *Dorsey v. Morgan Stanley*, 507 F.3d 624, 627 (7th Cir. 2007) (citation and quotation marks omitted). Additionally, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Hemsworth*, 476 F.3d at 490 (citation omitted). "The opposing party cannot meet this burden with conclusory statements or speculation but only

with appropriate citations to relevant admissible evidence." *Sink v. Knox County Hosp.*, 900 F. Supp. 1065, 1072 (S.D. Ind. 1995) (citations omitted).

Additionally, "[a] document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). However, the Court notes that:

> [I]t is also well established that pro se litigants are not excused from compliance with procedural rules. [T]he Supreme Court has never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel[.] Further, as the Supreme Court has noted, in the long run, experience teaches that strict adherence to the procedural requirements specified by the legislature is the best guarantee of evenhanded administration of the law.

*Loubser v. United States*, 606 F. Supp. 2d 897, 909 (N.D. Ind. 2009) (citations and quotation marks omitted).

The Court views the designated evidence in the light most favorable to Carter, as the nonmoving party, and draws all reasonable inferences in his favor. *Bright v. CCA*, 2013 U.S. Dist. LEXIS 162264, at *8 (S.D. Ind. Nov. 14, 2013). "However, employment discrimination cases are extremely fact-intensive, and neither appellate courts nor district courts are obliged in our adversary system to scour the record looking for factual disputes." *Id.* at *8–9 (citation and quotation marks omitted). "[N]either the mere existence of some alleged factual dispute between the parties nor the existence of some metaphysical doubt as to the material facts is sufficient to defeat a motion for summary judgment." *Chiaramonte v. Fashion Bed Grp., Inc.*, 129 F.3d 391, 395 (7th Cir. 1997) (citations and quotation marks omitted).

### III. DISCUSSION

Envirotech requests summary judgment on Carter's race discrimination claim, asserting

that summary judgment is appropriate because Carter cannot establish a *prima facie* case of discrimination and Envirotech had a legitimate, non-discriminatory reason for terminating Carter's employment.

Title VII makes it unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). The legal standard is simply whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the discharge or other adverse employment action. *Ortiz v. Werner Enterprises, Inc.*, 2016 WL 4411434, at *4—F.3d— (2016). Evidence must be considered as a whole, rather than asking whether any particular piece of evidence proves the case by itself—or whether just the "direct" evidence does so, or the "indirect" evidence. *Id.* Relevant evidence must be considered and irrelevant evidence disregarded, but no evidence should be treated differently from other evidence because it can be labeled "direct" or "indirect." *Id.*

The sole question that matters is whether a reasonable juror could conclude that Carter would have kept his job if he had a different ethnicity, and everything else had remained the same. *See Anchor v. Riverside Golf Club* 117 F.3d 339, 341 (7th Cir. 1997), *Troupe v. May Department Stores Co.*, 20 F. 3d 734 (7th Cir. 1994).

Carter has not shown that the decision to end his employment was in any way connected to his race. In his response brief, Carter states that "the general manager, Tony Martin specifically stated to his witness Vicky Spurgeon that worked in Human Resources "Make sure that Nigger don't get his health savings money." (Filing No. 20.) And he asserts that an unnamed co-worker told him the company would not make him an operator because of his race. However, these

7

statements are unsupported hearsay and he has not submitted an affidavit from either of these witnesses. As the Seventh Circuit has often stated, "summary judgment 'is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events.'" *Koszola v. Bd. of Educ. of City of Chi.*, 385 F.3d 1104, 1111 (7th Cir. 2004) (quoting *Johnson v. Cambridge Indus., Inc.,* 325 F.3d 892, 901 (7th Cir. 2003)).

Carter also asserts that "the owner, Jerry Martin, would always make slide comments towards me such as "Oh I see that your [sic] still here" with a disgusted look on his face every time he would see me working." (Filing No. 20). The Court cannot say that this generic comment and an unkind facial expression is direct or circumstantial evidence of any racial animus.

With respect to the November 7, 2013 incident involving Farley and Rudicil, Carter conceded in this deposition that the supervisors took quick action to put a stop to the discriminatory behavior by his co-workers (Filing No. 18-17 Ex Q, p. 67), and testified that the supervisors did not participate in any kind of harassment against him personally. Once the employer is made aware of the harassing conduct, "the employer can avoid liability for its employees' harassment if it takes prompt and appropriate corrective action reasonably likely to prevent the harassment from recurring." *Vance*, 646 F.3d at 471; *see also Porter v. Erie Foods Int'l, Inc.*, 576 F.3d 629, 636 (7th Cir. 2009) ("[o]ur focus, therefore, is on whether [the employer] responded promptly and effectively to the incident"). Nothing in the circumstances described by Carter point directly to a discriminatory reason for Envirotech's actions in terminating Carter. All the evidence in the record shows that prompt corrective action was taken following the racist incident with his coworkers and points to the conclusion that Carter's termination was because of insubordination, attendance and the damage of property.

Envirotech persuasively asserts that Carter cannot establish a *prima facie* case of discrimination based on race because the evidence shows that he did not meet Envirotech's legitimate job expectations. Once the defendant employer asserts a non-invidious explanation for its employment decisions, the plaintiff must then present sufficient evidence to show that the employer's explanation is merely pretextual. *Keeton v. Morningstar, Inc.*, 667 F.3d 877, 884 (7th Cir. 2012); *Grady v. Affiliated Comput. Servs. ACS*, No. 1:13-CV-342-TWP, 2015 WL 1011355, at *4 (S.D. Ind. Mar. 4, 2015) (J. Pratt). Pretext means "a dishonest explanation, a lie rather than an oddity or an error." *Kulumani v. Blue Cross Blue Shield Ass'n*, 224 F.3d 681, 685 (7th Cir. 2000); *Miller*, 2014 WL 4259628, at *5. Accordingly, the question is not whether the employer's explanation for its employment decision was "accurate, wise, or well-considered", but whether the employer's explanation was "honest". *Ptasznik v. St. Joseph Hosp.*, 464 F.3d 691, 696 (7th Cir. 2006). While the court is not in the position to "sit as a superpersonnel department that will second guess an employer's business decision . . . [the Court] need not abandon good reason and common sense in assessing an employer's actions." *Gordon v. United Airlines, Inc.*, 246 F.3d 878, 889 (7th Cir. 2001); *Miller*, 2014 WL 4259628, at *6. To show that the employer's non-discriminatory explanations are not credible, the plaintiff must point to evidence that the employer's stated reasons are not the real reasons for the employer's action, have no grounding in fact, or are insufficient to warrant the employer's decision. *Id.*; *Boumehdi v. Plastag Holdings, LLC*, 489 F.3d 781, 792 (7th Cir. 2007) (noting that a plaintiff must identify such "weaknesses, implausibilities, inconsistencies, or contradictions" in the employer's asserted reasons that a reasonable person could find them not credible). Envirotech argues that it was Carter's damaging of its property and his insubordination that finally led to his termination.

9

Envirotech explains that Carter did not meet its legitimate job expectations when he was absent from work more times than he was allowed in a six month period and when he damaged Envirotech's property on four occasions during the final two months of his employment. Envirotech also argues that Carter cannot show that a similarly situated employee was treated differently. As an example, Envirotech asserts that another employee, who was Caucasian, was terminated prior to Carter, for also damaging property, and Carter does not challenge this evidence. In addition, Envirotech points out that Carter does not dispute that he had attendance problems and admits that he accidently damaged products and equipment on four occasions between June 2014 and his termination date in August 2014.

Carter contends that the reason for his termination was pretextual but the evidence he presents does not support his argument. To show pretext, Carter argues that he was never written up prior to filing his EEOC claim against Envirotech. However, Envirotech provided evidence in the record that shows Carter had been written up for his attendance and negative performance long before he filed the EEOC claim. In October 2013, November 2013 and January 2014, several months prior to filing the EEOC claim, Carter had received negative remarks on his evaluations regarding his attentiveness, attendance, and dedication.

Carter also points to the two times that he was laid off as indicative of discrimination. He argues that on both occasions, employees with less seniority than him were allowed to stay at work are were not subjected to lay off. Envirotech asserts that Carter was not laid off because of his race, but because of his poor attendance and disciplinary record. Carter had received notices that he missed his maximum amount of days and was placed on probation during those time periods. He was laid off twice before he filed his claim with the EEOC, therefore the lay-offs do not present

evidence of retaliation or discrimination[3]. Carter has not shown that Envirotech's articulated reasons for terminating his employment were pretextual. Thus, summary judgment is warranted on Carter's claims for race discrimination under Title VII.

## IV. <u>CONCLUSION</u>

Having evaluated all of the evidence as a whole, the Court determines that a reasonable juror would not conclude that Carter would have kept his job if he had a different ethnicity and everything else had remained the same. Defendant Envirotech Extrusion, Inc.'s Motion for Summary Judgment (Filing No. 16) is **GRANTED**.

**SO ORDERED.**

Date: 9/7/2016

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

Kenneth Carter
1801 South J Street, Apt. 4B
Richmond, Indiana 47374

Andrew J. Sickmann
BOSTON BEVER KLINGE CROSS & CHIDESTER
ajsickmann@bbkcc.com

---

[3] Although not specifically pled, Carter asserts in his response that Envirotech retaliated against him when he filed the EEOC claim. "[A]n employer may not retaliate against an employee who has complained about discrimination or other employment practices that violate Title VII." *Racicot v. Wal-Mart Stores*, Inc., 414 F.3d 675, 678 (7th Cir. 2005). U.S.C. § 2000e-3(a) (2012). Any claim for retaliation fails for the same reasons as the race discrimination claim.